## COMPUWARE CORPORATION, Plaintiff,

### v.

## MOODY'S INVESTORS SERVICES, INC., Defendant.

### Civ. No. 03–70247.

United States District Court,
E.D. Michigan,
Southern Division.

July 7, 2004.

---

Michael J. Barton, Plunkett & Cooney, Bloomfield Hills, MI, Scott T. Seabolt, Foley & Lardner, Detroit, MI, for Plaintiff.

Thomas F. Cavalier, Barris, Sott, Detroit, MI, Joshua M. Rubins, Satterlee, Stephens, New York City, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff Compuware Corporation ("Compuware") moves for partial reconsideration of my opinion of June 10, 2004, arguing that I was mistaken in my finding that Defendant Moody's Investors Services, Inc. ("Moody's") would qualify for protection as a journalist under the New York reporter's privilege statute. For the reasons below, the motion is DENIED.

## FACTUAL BACKGROUND

In my opinion of June 10, 1994, I found that *In re Fitch*, 330 F.3d 104 (2nd Cir.

2003), was clearly distinguishable from the present case and therefore Moody's qualified as a journalist under the New York Shield Law. (Slip Op., 12–3.) The Second Circuit found Fitch did not qualify for the privilege provided by the New York statute for two reasons: first, Fitch issued ratings only when hired to do so, and second, Fitch "play[ed] an extremely active role in structuring the transaction" it rated. 330 F.3d 104, 109 and 111. Although I mentioned both factors in my analysis, my opinion focused on the first factor, citing a Tenth Circuit case that indicated Moody's did perform ratings even when it was not hired to do so. (Slip Op., 12–3.)

One of Plaintiff's exhibits is a hearing of a transcript before the Securities and Exchange Commission on November 21, 2000, in which the president of Moody's said that the company had "essentially[ ] abandoned the practice" of issuing unsolicited ratings. (Pl.'s Mt. to Compel, Ex. C, p. 149.) The president went on to say that Moody's had not done an unsolicited "first-time rating" since 2000. (Id. at 150.) The case I relied on in my previous opinion for support that Moody's did issue unsolicited ratings, *Jefferson County School District v. Moody's Investor Services, Inc.*, regarded an unsolicited rating of a product Moody's had previously been hired to rate. 175 F.3d 848 (10th Cir.1999).

## ANALYSIS

Even assuming Moody's no longer undertakes any unsolicited ratings, even if it has previously issued ratings of the same company or transaction, *Fitch* is clearly distinguishable. The *Fitch* court found that Fitch had taken a significant role in structuring the transaction it rated, and noted that "this is not typical of the relationship between a journalist and the activities upon which the journalist reports." 330 F.3d 104, 111. This finding was characterized by the court in *Fitch* as "coun-

sel[ing] strongly against" a finding that Fitch qualified as a journalist, whereas the fact that they only performed ratings when hired to do so "weighed against" finding Fitch was a journalist. As I noted in my previous opinion, no allegations of similar participation in the rated transaction are asserted against Defendant here.

In finding that Standard and Poor's (S & P), a company similar to Defendant, qualified to assert the reporter's privilege, the court in *In re Pan Am* stressed the fact that S & P was "functioning as a journalist, *viz.*, with the intent to use the material to disseminate information to the public, when it gathered the information sought here" (emphasis in original). 161 B.R. 577 at 581–2 (S.D.N.Y.1993). Therefore, although the court in *Fitch* distinguished *In re Pan Am* on the basis of the paid vs. unpaid ratings, I believe a reading of *In re Pan Am* and *Fitch* together makes it clear that the most important factor in determining whether Defendant is qualified to assert the journalist's privilege is the nature of Defendant's relationship with the alleged "source." In this case, there is no allegation that Moody's stepped outside its role as an information gatherer.

Given this case law, I believe it is clear Moody's qualifies to claim the reporter's privilege under New York law for at least two reasons: (1) it analyzes information on matters of public interest and concern, thereby fitting the statutory definition of a newsgatherer; and (2) it did not participate in the structuring of the debt it was rating, and therefore remained in the role of a newsgatherer.

I wish to make a note about the extent of my previous opinion and New York's privilege law. On July 12, 2004, Moody's must supply a list detailing the contents of all documents not received under a condition of confidentiality to me *in camera.* Assuming that any document so obtained

meets the standards of the New York law (i.e., "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim; and (iii) is not obtainable from any alternative source") I will order it to be disclosed. New York Civil Rights Law § 79–h (c). Moreover, should Compuware request materials developed by Moody's analysts (e.g., research files, notes or memos written by Moody's employees regarding the rating in dispute) that depositions or other documents indicate would meet the criteria described above, I would likewise order these to be disclosed. *Id.; see also Scott v. Cooper,* 227 A.D.2d 463, 642 N.Y.S.2d 935 (1996).

**CONCLUSION**

Because I find the case law makes it clear Moody's qualifies to invoke the reporter's privilege under New York law, Plaintiff's Motion for Reconsideration is DENIED.

**IT IS SO ORDERED.**